**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-237-DLB**

**NIKITA ZHALNIN**                                                                    **PETITIONER**


**v.**                              **MEMORANDUM OPINION AND ORDER**


**DEPARTMENT OF HOMELAND SECURITY**                                **RESPONDENT**

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

**I.      INTRODUCTION**

This matter is before the Court on Petitioner Nikita Zhalnin's *pro se* Petition for Writ

of Habeas Corpus (Doc. # 1).  Respondent having filed its Response (Doc. # 4) and

Petitioner having filed his Reply (Doc. # 5), the matter is now ripe for the Court's review.

For the following reasons, the Court will **grant** the Petition.

**II.      FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a native and citizen of Russia who entered the United States on

October 15, 2024 at the DeConcini port of entry in Nogales, Arizona.  (Doc. # 4-1 at 2).

Petitioner booked an appointment through CBP One to seek asylum.  (*Id*.).  That same

day, Petitioner was issued a Notice to Appear ("NTA") (Doc. # 1-2 at 14) and was released

on parole.[1]  On June 12, 2025, Petitioner was served with a Warrant for Arrest of Alien

---

[1]  There is a discrepancy regarding how long Petitioner was paroled into the country.  In his Petition, Zhalnin filed a scanned copy of a physical I-94, which indicates that he was to be paroled until October 14, 2026.  (Doc. # 1-2 at 13).  Respondents, however, filed a digital version of Petitioner's I-94 from the Department of Homeland Security's website that states he was to be paroled until April 24, 2026.  (Doc. # 4-3 at 1).

1

(Doc. # 4-3) and was taken into custody.  On June 10, 2026, nearly a year after being taken into custody, DHS terminated Petitioner's parole.  (Doc. # 4-5).

On May 27, 2026, Zhalnin filed the instant Petition for Writ of Habeas Corpus (Doc. # 1).  On May 28, 2026 the Court issued an order directing Respondent to respond to the Petition.  (Doc. # 3).  Respondent having filed its Response (Docs. # 4), and Petitioner having filed his Reply (Doc. # 5), the matter is ripe for the Court's review.

## III.   ANALYSIS

Petitioner concedes that DHS is properly classifying him as an arriving alien.  (*See* Doc. # 5 at 2) ("Petitioner does not dispute that DHS may classify him as an 'ariving [sic] alien' for immigration purposes.").  Thus, unlike other recent habeas corpus cases this Court has seen, Petitioner is not arguing that he is being improperly classified as an arriving alien under 8 U.S.C. § 1225.  (*Id*.).  Rather, Petitioner argues that his prolonged detention and the continued rescheduling of his individual merits hearing is "unnecessary, excessive, and inconsistent with the protections guaranteed by the Due Process Clause of the Fifth Amendment."  (*Id*. at 4).  Respondent disagrees, arguing that "any substantive due process claim challenging Petitioner's detention pending removal proceedings fails."  (Doc. # 4 at 14).

### A.  Relevant Framework

Because Petitioner does not dispute that he is being properly held under § 1225, "the question before the Court is whether Respondent['s] interpretation and application of § 1225(b)(2) has deprived [Petitioner] of his due process rights under the Fifth Amendment."  *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *3 (S.D. Ohio Jan. 2, 2026).  For reasons set forth below, the Court concludes that "'[n]on-punitive

2

detention in the immigration context violates the Due Process Clause,' [] absent 'adequate procedural protections' or a 'special justification' outweighing a petitioner's liberty interest." *Azalyar*, 2026 WL 30741, at *3 (quoting *Padilla v. United States Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2003) and *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

The Fifth Amendment states, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))).  To determine whether a detainee's due process rights have been violated, courts within the Sixth Circuit apply a three-part balancing test:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

### 1. Private interest

As to the first factor, Petitioner has a cognizable private interest in avoiding detention without an opportunity for a bond hearing. *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the

3

Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Respondents are firm in their position that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2), yet they "fail to contend with the liberty interests created" when the United States paroled Petitioner in 2024. *Azalyar*, 2026 WL 30741, at *4. Petitioner spent nearly eight months at liberty—and was, in fact, entitled to more had he not been detained—in the United States before Respondents detained him, and therefore "possesses a *significant* private interest in his freedom from detention." *Id*. (emphasis in original); *see also Singh v. Andrews*, No. 1:25-cv-801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (holding that the petitioner had a substantial private interest in remaining free from detention because he had been "out of custody for nearly a year-and-a-half, and during that time, ha[d] lawfully worked full-time, and regularly volunteer[ed] at his temple."). This Court agrees with numerous other district courts "in finding that individuals paroled from civil immigration custody have a protectable liberty interest in remaining so." *Azalyar*, 2026 WL 30741, at *4.

4

### 2. *Erroneous deprivation*

The second *Mathews* factor requires the Court to consider "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Hernandez-Fernandez v. Lyons*, No. 5:25-cv-773, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025) (quoting *Martinez v. Sec. of Noem*, No. 5:25-cv-01007-JKP, 2025 WL 2598379, at *3 (W.D. Tex. Sept. 8, 2025)).

Petitioner does not dispute that he is being properly detained under § 1225(b)(2). Moreover, Petitioner "recognizes that immigration proceedings may require time" but he nonetheless argues that "the Constitution does not permit civil detention to become effectively indefinite merely because proceedings remain pending." (Doc. # 5 at 7). The Court agrees. Petitioner's detention "must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Azalyar*, 2026 WL 30741, at *5 (quoting *Valencia Zapata v. Kaiser*, No. 25-cv-07492, 2025 WL 2578207, at *9-10 (N.D. Cal. Sept. 5, 2025)). The United States previously determined that Petitioner did not pose a threat, paroling him into the United States under 8 U.S.C. § 1182(d)(5)(A), which allows for DHS to parole a noncitizen into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . ." (*See* Doc. # 4-5 at 1). Because Respondent has "'communicated no basis under those statutory purposes' for re-detaining him now, there is a high risk that [Petitioner] has been and will continue to be erroneously deprived of his liberty." *Azalyar*, 2026 WL 30741 at *5 (quoting *Zapata*, 2025 WL 2578207, at *10).

This conclusion is reinforced by the knowledge that Petitioner was detained prior to his parole expiring, and he has remained detained for over a year at the time of this Order. Petitioner has not had access to an individualized bond hearing, nor has he had access to a hearing on his immigration case during this time. Therefore, to counter the current risk of erroneous deprivation, a *constitutionally proper* custody redetermination hearing is appropriate. *See Azalyar*, 2026 WL 30741 at *5 ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying Azalyar's continued detention[.]"); *Hernandez-Fernandez*, 2025 WL 2976923, at *9 ("[T]he risk of erroneous deprivation is high if Hernandez is not afforded a detention hearing"); *Edahi v. Lewis*, No. 4:25-cv-126-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025) (holding that detention "without any individualized assessment, establishes a 'high risk of erroneous deprivation' of a protected liberty interest." (quoting *Munoz Materano v. Arteta*, No. 25 Civ. 6137, 2025 WL 2630826, at *15 (S.D.N. Y. Sept. 12, 2025))).

### 3. Government interest

Finally, the Court must weigh the government's interest. Respondents do not put forth any argument on why their interest outweighs Petitioner's. Of course, the Court recognizes that the government "has legitimate interests in ensuring that noncitizens appear for removal hearings and do not pose a danger to the community." *Azalyar*, 2026 WL 30741, at *5 (citing *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017)). However, a proper custody redetermination will allow the government to plead its case. Once a constitutionally adequate custody redetermination hearing takes place, the government is free to argue its position on why Petitioner should not be granted bond—

such an opportunity ensures that there is no risk of impeding on the government's interest. Accordingly, "the government's interest in protecting the public of avoiding additional administrative burdens do not outweigh the countervailing liberty interest at stake," *Padilla*, 704 F. Supp. 3d. at 1174, "especially when an established mechanism exists to vindicate due process." *Azalyar*, 2026 WL 30741, at *5.

Petitioner argues that he has spent over a year in immigration detention "awaiting the continuation of the same hearing and a final decision on his asylum application." (Doc. # 5 at 5). He argues that this prolonged detention "has become excessive, unreasonable, and inconsistent with the Due Process Clause of the Fifth Amendment." (*Id*. at 7). For the foregoing reasons, the Court agrees. [2] To remedy this violation, Petitioner argues the appropriate remedy is immediate release. (Doc. # 1 at 7). However, the Court finds that the more appropriate remedy is a constitutionally adequate bond hearing wherein the Respondents bear the burden of proof under a clear and convincing standard.

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)     Zhalnin's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)     Respondents are **ORDERED** to **immediately release** Petitioner, or in the

alternative, provide him with a **constitutionally adequate bond hearing in**

---

[2]     This conclusion is reinforced by the knowledge that Respondents did not properly revoke Petitioner's parole. While not argued by Petitioner, the Court takes notice that Petitioner was taken into custody on June 12, 2025. (Doc. # 4-3). Regardless of which I-94 one looks at (*See* Docs. # 1-2 at 13 and 4-3), Petitioner was still on parole when he was taken into custody. There is no indication by either party that Petitioner's parole was properly terminated when this occurred. Indeed, for some reason, Respondents argue that Petitioner was taken into custody on June 12, 2026, and therefore his parole had already automatically expired. This is simply not true – Petitioner was taken into custody on June 12, 2025, when his parole was still very much active. (Doc. # 4-3). Moreover, it was not until June 10, 2026, nearly a year after Petitioner had been detained—and only two weeks after Petitioner had filed his Petition—did Respondents terminate his parole with written notice. (Doc. # 4-5). Meaning, Petitioner was being improperly detained without written notice of the termination of his parole. This reinforces the Court's decision that Petitioner's detention has been an ongoing violation of his Due Process rights.

**which the government bears the burden of proof before an IJ within seven (7) days of the date of this order**; and

(3)   Respondents shall file a Status Report with this Court **on or before August 10, 2026**, to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 27th day of July, 2026.



Signed By:

_David L. Bunning_

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-237- Order granting writ .docx